MICHAEL ROY JOHNSON #11370-007

UNITED STATES PENITENTIARY

P.O. BOX 019001    UNIT 4A-120

ATWATER, CALIFORNIA 95301



*Related DDJ*

*Fee Due*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

Michael Roy Johnson ) Case No.: CV16-02677-ODW (PLA)

       Petitioner, )

vs. ) PETITION FOR WRIT OF

Andre Matevousian, Warden, ) HABEAS CORPUS BY A

       Respondent. ) PERSON IN FEDERAL CUSTODY

_____ ) PURSUANT TO 28 U.S.C. §2241

THIS PETITION CONCERNS A CONVICTION

1. United States Penitentiary Atwater

2. D.C. Superior Court, 500 Indiana Avenue, N.W., Washington, DC 20001.

3. Rape While Armed 1990 FEL 5852

4. Sentenced in November 1990 to 15 years to life.

5. After a guilty plea.

6. N/A

7. I did file an appeal from the judgment of conviction.

8. District of Columbia Court of Appeals.

   (2) Result: Denied

   (3) Date of Result: November 24, 1993

   (4) Citation: Atlantic Reporter 633 A.2d 833.



(5) Grounds: (A) Incompetence to enter plea; (B) failure to hold pre-plea competency hearing, and (C) failure to hold hearing on Motion to Withdraw Plea.

(b)(1) Name of Court: D.C. Court of Appeals

   (2) Denied

   (3) October 13, 2000

   (4) Don't know

   (5) Grounds raised: (A) Ineffective Counseling; (B) Refusing to hold competency hearing for complainant, and (C) Ineffective Appellate Counsel.

(c)(1) Name of Court: D.C. Court of Appeals

   (2) Denied

   (3) June 10, 2015

   (4) No. 13-CO-1515

   (5) Grounds Raised: (A) District Court denied motion to withdraw without a hearing; (B) Actual Innocence; (C) Involuntary Plea; (D) Ineffective Assistance of Counsel.

9. State CONCISELY every ground on which you claim that you are being held unlawfully. Summarize briefly the facts supporting each ground. If necessary, attach a SINGLE page only behind this page.

(a) Ground One: THE GOVERNMENT MISREPRESENTED THE PRESENCE OF MATERIAL EVIDENCE TO INDUCE A GUILTY PLEA.

SUPPORTING FACTS: Petitioner was accused of placing a gray cord around the complainant's neck and forcing her to engage in unconsensual intercourse on the night of May 23,

2

1990. Police, allegedly, found a gray telephone cord at the scene, and the government entered it into evidence. Trial counsel advised his client to consider pleading guilty due to the weight of the evidence. Petitioner refused, asserted his innocence and expressed his desire to go to trial. On June 22, 2012, Petitioner filed a motion requesting DNA testing on the cord allegedly found. Once the box of evidence was located and inventoried, it was discovered that there was no cord, despite "one gray telephone cord" being documented on the MPD PROPERTY RECORD and the EVIDENCE REPORT. The government, now, states that it never stated that the cord found was the actual cord used in the alleged offense. The Court accepted the government's argument in its October 17, 2013 Order. But this sentiment was not disclosed to the defense during pretrial.

(b)   Ground Two: TRIAL COUNSEL MADE PROMISE OF A 3 to 9
      YEAR SENTENCE TO INDUCE AN INVOLUNTARY GUILTY PLEA.
      SUPPORTING FACTS: October 2, 1990, Petitioner's trial was due to begin. A jury had been selected but not yet sworn. However, Counsel, at this time, informed Petitioner that he did not have a defensive strategy, and Petitioner asked for a recess to consult with his attorney. Counsel, at this time, assured Petitioner that he had a deal with the government of a 3 to 9 year sentence in exchange for a guilty plea. Reluctantly, Petitioner changed his plea from not guilty to guilty because he did not want to risk going to trial with an unprepared attorney.

When confronted with the allegations, counsel submitted a sworn affidavit asserting that there was a discussion of a 3 to 9 year sentence, but he did not promise Petitioner that he would get it. It should also be noted that counsel recommended a 3 to 9 year sentence to the Court during sentencing.

(c) Ground Three: TRIAL JUDGE MADE ERRONEOUS RULING ON NEW FACTUAL EVIDENCE.

SUPPORTING FACTS: During Petitioner's recent attempt to withdraw his guilty plea, he presented a letter to the Court from a member of his defense team. The letter was addressed to Parole Chairman Isaac Fulwood and was intended to assist Petitioner with his parole endeavors. Therein, Ms. Jo Cohen, of the D.C. Public Defenders Service, stated "Without 'retrying' these facts, it is suffice to say that because he [Johnson] accepted a plea on the ill advice of his attorney, the whole story never came to light."

Petitioner presented this letter (dated 10/1/09) to the Court as new factual evidence in support of his claim that his guilty plea was induced by the ill advice of his attorney. The court ruled "[T]hat statement reflected only Ms. Cohen's opinion relating to complainant's veracity with no claim of personal knowledge of the facts,..." The court never addressed Ms. Cohen's comment about Petitioner accepting the guilty plea on the ill advice of his attorney.

Ms. Cohen's statement involved a matter outside of the record and, therefore, an evidentiary hearing should have been warranted to obtain further information from Ms. Cohen

4

regarding her statement.

(d) Ground Four: TRIAL COURT'S FAILURE TO MAKE SUFFICIENT INQUIRY INTO PETITIONER'S COMPETENCE AND GIVE ADEQUATE WEIGHT TO PETITIONER'S SUICIDE ATTEMPTS VIOLATED DUE PROCESS.

SUPPORTING FACTS: Petitioner asserts that the trial Court should have held a specialized hearing prior to the acceptance of his guilty plea due to a psychological episode he experienced on September 26, 1990, (one week prior to entering his guilty plea), during which Petitioner set his cell on fire and threatened to hang himself. Petitioner was suffering from depression and stress.

Counsel, during sentencing, had even mentioned to the Court how Petitioner reacts while under stress and, therefore, suggested to the Court that Petitioner be moved back to the psychological wing at the D.C. Jail. This issue, raised a NEW FACTUAL ISSUE pertaining to competence, and the Court should have held a hearing on the motion.

Additionally, on November 2 and 5, 1990, Dr. Daniel A. Feerst conducted a psychological evaluation of Petitioner and documented his findings in his report on November 13, 1990. The findings in this report were presented to the Court prior to sentencing. Therein, Petitioner confessed that he "will consider ending his life if he gets a long prison term...."

The Petitioner admitted to hearing "whispering voices," in his cell at night which he described as "one good" and "one bad" giving him directions in life, and he was on psy-

5

chotic medication (Sinaquon) at the time, and Dr. Feerst suggested anti-depressant medication "for a period of not less than 3 years." Petitioner also admitted that "his biggest fear is depression which he says 'wears him down and makes him weak.'"

To furtherly express the need for a specialized hearing, Petitioner's statements during sentencing, alone, warranted such. When asked if he had anything to say, the Petitioner rambled on unable to put together a complete sentence or thought, and this should have been a red flag for the Court. Petitioner had been experiencing Major Depression from September 1990 to November 1990.

(e) Ground Five: DENIED EFFECTIVE ASSISTANCE OF TRIAL COUNSEL.

SUPPORTING FACTS: Trial counsel, Charles F. Daum, had knowledge of Petitioner's psychological history, and he was aware of the issues that triggered his client's unstableness (Stress and Depression). Seventy days before his plea and forty-one days after entering his plea, Petitioner had been diagnosed as suffering from several mental disorders that are known to impair one's ability to make rational decisions, especially under duress.

Counsel was aware of his client's attempted suicide one week prior to entering his plea, and failed to request a specialized hearing to determine his competency before allowing him to go on with a trial.

Counsel was asked by the Court if he thought Petitioner was competent to enter a plea, and Counsel replied yes, but then he asked the Court to move his client back to the psychological wing at the D.C. Jail after sentencing.

Counsel did not thoroughly investigate facts surrounding the charge or prepare a viable defense of consent. Counsel's failure to prepare adequately for trial is demonstrated by his confession to Petitioner moments before the jury was to be sworn. Counsel informed Petitioner that he did not have a defensive strategy. This prompted Petitioner to ask for a recess to consult with his attorney. Thereafter, Petitioner changed his plea from not guilty to guilty.

Counsel failed to appraise himself of the evidence, and the government was allowed to enter "a cord" that had not been established as the actual weapon used in the alleged offense. Had he known, counsel could have filed a timely motion to suppress, which would have likely been granted.

At sentencing, counsel failed to request "a more in-depth psychiatric evaluation" to rule out any thought disorder associated with auditory hallucinations for which medication may have been indicated as suggested by Dr. Feerst in his November 13, 1990 report. Therein, Petitioner confessed that he "will consider ending his life if he gets a long prison term...."

The above-stated facts confirm counsel's suggestion to the Court as to why his client should be moved back to the psychological unit of the D.C. Jail, and he was.

(f) Ground Six: COUNSEL INEFFECTIVENESS TAINTED THE SENTENCING PHASE OF THE TRIAL.

SUPPORTING FACTS: During sentencing, counsel was asked if there were any factual errors in the Presentence Report that need to be corrected, and he replied "No, Sir." However, some time later in the proceedings, counsel admitted to having several corrections which were not only untrue, but they were prejudicial to his client.

First, counsel made a correction stating that "defendant was at a phone booth. This correction was not only baseless, but it was untrue. Petitioner was never at a phone booth. Second, counsel asserted that the petitioner "did force the complainant to perform oral sodomy while the cord was around her neck, that was not simultaneous to the time he held the cigarette litter to her head." These statements are totally untrue.

Petitioner had never admitted to counsel or anyone else that he held a lighter to the complainant's head and forced her to engage in oral sodomy. In fact, the government never even proffered during the plea proceedings that Petitioner forced the complainant to engage in oral sodomy. Although a lighter was recovered from the scene, forensics confirmed that Petitioner's finger prints weren't on it. So where did the lighter come from? Finally, counsel made corrections to his previous statement to the PSR writer. He initially told her that 6 to 7 gray cords were recovered; then he admitted to saying "a six to seven foot gray extension cord" was recovered. This comment is very important because the govern-

ment also asked the evidence branch to locate 6 to 7 gray cords after Petitioner filed his motion seeking DNA testing.

There have been conflicting statements made as to the number of cords that were actually found in this case. The Government, in its Opposition to Defendant's Motion for Post-Conviction DNA Testing, at page 5, stated "The government advised MPD personnel that the target evidence consisted of 'seven gray extension cords.'" This statement was made by Assistant U.S. Attorney Timothy Lucas, who also stated in a letter (dated 8/8/12) to Inspector Nathan Sims of the MPD, "Among the items seized as evidence were seven (7) gray telephone extension cords...."

First counsel speaks of 6 to 7 cords and then the AUSA states the same on two different occasions, but yet NO CORDS have been found. This is very suspicious, and Petitioner should not have to serve out a life sentence based on suspicions.

10. I have filed a previous habeas corpus petition with respect to this conviction, but it was in reference to my parole issues.

11. If your answer to Question No.10 was yes, give the following information:

    (a)(1) Name of Court: United States District Court for the Eastern District of California.

    (2) Nature of Proceedings: Parole matters.

    (3) Grounds Raised: Parole Commission inappropriately applied wrong parole guidelines and Unwarranted restraint of liberty.

    (4) Result: Petition was denied.

    (5) Date of Result: March 29, 2011

    (6) Citation: 1:10-cv-01164-SMS (HC).

12. I am a D.C. Code offender in federal custody, so §2255 does not apply to me. However, the remedy that I did avail myself of was inadequate because the court failed to address the specifics of my claims, whereby preventing me from receiving a fair and adequate review of my claims.

13. I am not represented by counsel.

14. I am not seeking leave to proceed in forma pauperis.

WHEREFORE, Petitioner prays that the court grant Petitioner relief to which he may be entitled in this proceeding.

---

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.

Executed on February 27, 2016

*Michael R. Johnson*
Signature of Petitioner





UNITED STATES PENITENTIARY, ATWATER
P.O. BOX 019000
ATWATER, CA. 95301  DATE   APR 14 2016

The enclosed letter was processed through special mailing procedures for forwarding to you. The letter has neither been opened nor inspected. If the writer raises a question or problem over which this facility has jurisdiction, you may wish to return the material for further information or clarification. If the writer enclosed correspondence for forwarding to another addressee, please return the enclosure to the above address.